**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sheldon Walker, | No. CV-14-02554-PHX-DJH (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

On November 18, 2014, Plaintiff Sheldon Walker, who is confined in the Arizona State Prison Complex-Eyman, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. 1983. (Doc. 1.) On January 28, 2015, after screening Plaintiff's Complaint, the Court granted his Application to Proceed in Forma Pauperis, and dismissed without prejudice Counts One and Six, the RFRA claims in Counts Two through Five, and Defendants Crabtree, Han, and McLaughlin. (Doc. 7.) The Court also ordered Defendants Ryan, Vicklund, and Linderman to answer Counts Two, Three, Four, and Five. (*Id.*)

On February 5, 2015, Plaintiff filed a First Amended Complaint. (Doc. 9.) On April 23, 2015, the Court struck Plaintiff's First Amended Complaint for his failure to comply with Rule 15.1 of the Local Rules of Civil Procedure. (Doc. 15.) On April 30, 2015, Plaintiff filed a Motion for Leave to File his First Amended Complaint. (Doc. 17.) On May 18, 2015, Defendants filed a Response to Plaintiff's Motion, indicating that they do not object to his request for leave to amend, but they request the Court screen Plaintiff's First Amended Complaint. (Doc. 19.)

1    As detailed below, the Court will grant Plaintiff's Motion for Leave to Amend and
2    order the Clerk of Court to file Plaintiff's First Amended Complaint lodged at Doc. 18.
3    Further, after screening the First Amended Complaint, the Court will dismiss Plaintiff's
4    claims in Counts One and Two, and order Defendants Ryan, Vicklund, and Linderman to
5    answer the remaining portions of the First Amended Complaint.

6    ## I.   Motion for Leave to Amend

7    Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may
8    amend its pleading . . . with the opposing party's written consent or the court's leave.
9    The court should freely give leave when justice so requires." Further, Rule 15.1(a) of the
10   Local Rules of Civil Procedure provides the following:

11   **(a) Amendment by Motion.** A party who moves for leave to amend a
12   pleading must attach a copy of the proposed amended pleading as an
     exhibit to the motion, which must indicate in what respect it differs from
13   the pleading which it amends, by bracketing or striking through the text to
     be deleted and underlining the text to be added. The proposed amended
14   pleading must not incorporate by reference any part of the preceding
     pleading, including exhibits.

15   Here, Defendants have no objection to Plaintiff's request for leave to file his First
16   Amended Complaint. (Doc. 19.) The Court further finds that Plaintiff has complied with
17   Rule 15.1 of the Local Rules of Civil Procedure. (*See* Docs. 17, 18.) Accordingly, the
18   Court will grant Plaintiff's Motion for Leave to Amend and order the Clerk of Court to
19   file Plaintiff's First Amended Complaint lodged at Doc. 18. Below, the Court screens
20   Plaintiff's First Amended Complaint pursuant to 28 U.S.C. § 1915A.

21   ## II.   Statutory Screening of Prisoner Complaints

22   The Court is required to screen complaints brought by prisoners seeking relief
23   against a governmental entity or an officer or an employee of a governmental entity. 28
24   U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff
25   has raised claims that are legally frivolous or malicious, that fail to state a claim upon
26   which relief may be granted, or that seek monetary relief from a defendant who is
27   immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).
28   . . . .

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

### a. Plaintiff's First Amended Complaint

In his six-count, First Amended Complaint, Plaintiff asserts violations of his rights under the First, Eighth, and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff names as Defendants Charles L. Ryan, Mike Linderman, Ralph McLaughlin, Stacey Crabtree, D. Han, Jerry Dunn, and Chaplain Vicklund. Plaintiff sues these Defendants in their individual and official capacities, and he seeks monetary damages and injunctive relief.

### i.  Count One

In Count One, Plaintiff asserts a due process claim relating to his maximum custody placement after being found guilty of a disciplinary violation and being removed from the "Step[-]Down Program."  Plaintiff alleges that on or about March 10, 1999, he was validated as a member of a STG at an STG hearing.  Consequently, Plaintiff claims, he was placed in the maximum security Browning Unit.  Plaintiff asserts that the only way he could be removed from administrative segregation is for him to disassociate with the STG through either "debriefing" or the Step-Down process.  Plaintiff alleges that the Step-Down Program allows STG members a way to leave Browning Unit by giving members the opportunity to demonstrate that they are no longer involved with the STG.

Plaintiff asserts that on June 6, 2012, he completed the Step-Down Program and became eligible to relocate from the Browning Unit to close custody housing and, on June 12, 2012, Plaintiff was transferred to close custody housing.  However, Plaintiff asserts that on January 9, 2013, during a classification hearing held by D. Han, Plaintiff was reclassified to maximum custody, because he was "found guilty of fighting with another inmate."  Plaintiff alleges that the Maximum Custody Placement Form states that his "violent behavior is detrimental to the safe and secure operation of the institution," and Plaintiff was terminated from the Step-Down Program as a result.[1]  Plaintiff further asserts that Jerry Dunn said Plaintiff was reclassified to maximum custody because he was terminated from the Step-Down Program.[2]

. . . .

. . . .

---

[1] Plaintiff more specifically alleges in Count Two of his First Amended Complaint that D. Han was responsible for classifying Plaintiff to "an indefinite term in maximum custody" based on Plaintiff's "major" disciplinary infraction.

[2] Although Plaintiff asserts in Count One that he was reclassified to maximum custody due to his removal from the Step-Down Program, Plaintiff specifically alleges in other portions of Count One and in Count Two that he was classified to maximum custody due to his disciplinary infraction.  In Count Two, Plaintiff complains that his classification is improper because his specific disciplinary infraction did not cause his score to reach the level necessary for maximum custody placement according to the Arizona Department of Correction's (ADC) Classification Technical Manual.

1    Plaintiff asserts that the ADC created D.O. 806 security threat group policies with
2    the express purpose of minimizing "the threat that inmate gang or gang like activity poses
3    to the safe, secure and efficient operations of institutions."  Plaintiff claims that pursuant
4    to D.O. 806, all recommendations regarding removal from the Step-Down Program must
5    be approved by the STG Validation Committee, and inmates may appeal those
6    recommendations to the STG Appeals Committee.  Plaintiff claims, however, that he was
7    never given notice that a hearing was held to consider his removal from the Step-Down
8    Program (to the extent it was held), and he was not given an opportunity to participate in
9    the Committee process or to otherwise be heard.  Plaintiff further asserts that he was
10   found guilty of a disciplinary ticket of disorderly conduct when he was defending himself
11   during a fight with another inmate.  Plaintiff complains that he was not found guilty of
12   "assaultive behavior," being the aggressor, or initiating the incident and, therefore, he
13   should not have been removed from the Step-Down Program and reclassified to
14   maximum custody.  Plaintiff contends that since June 6, 2012, he has not been involved
15   in any gang activity or STG activity and his previous STG validation is not sufficient to
16   place him in maximum custody pursuant to D.O. 806.

17   Plaintiff alleges that on January 23, 2013, he was informed that he could appeal
18   his removal from the Step-Down Program to Jerry Dunn.  Plaintiff asserts that he sent an
19   appeal letter to Dunn to appeal his removal from the Step-Program and his resulting
20   reclassification to maximum custody; however, Dunn never responded.

21   Plaintiff asserts that in July 2013, he was informed Dunn had retired and had been
22   replaced by Defendant McLaughlin and, on July 21, 2013, he submitted his appeal to
23   McLaughlin.  Plaintiff claims, however, that McLaughlin never responded to that appeal.
24   Plaintiff asserts that on September 24, 2013, he filed an informal resolution.  However,
25   McLaughlin again did not respond.  Plaintiff contends that he provided McLaughlin with
26   a hard copy of his appeal in January 2014, and that McLaughlin told Plaintiff he should
27   not have been removed from the Step-Down Program and returned to maximum custody
28   for a disciplinary ticket that was not gang related.

Plaintiff asserts that between February and May 2014, CO II Costello contacted McLaughlin about Plaintiff's appeal, and McLaughlin requested that Costello send McLaughlin a copy of the disciplinary ticket and incident report so that McLaughlin could confirm it was not for gang-related activity.  Plaintiff alleges that Costello provided McLaughlin with the requested information.  Plaintiff contends, however, that McLaughlin failed to respond to his appeal, failed to ensure that his rights were afforded in his continued confinement in maximum custody, "essentially den[ied him]  an appeal opportunity, and failed to ensure that D.O. 806.11.1 and D.O.  806 were properly implemented.

Plaintiff also asserts that on October 3, 2014, he appealed his annual classification review to Crabtree.  Plaintiff contends that even though Crabtree was aware that Plaintiff was not afforded due process rights in being removed from the Step-Down Program, Crabtree approved Plaintiff's continued confinement in maximum custody.  Plaintiff further asserts that Ryan, as the Director of ADC, is responsible for the proper implementation of all policies, McLaughlin and Crabtree, and affording inmates their constitutional rights.

### ii.  Count Two

In Count Two, Plaintiff asserts Eighth Amendment claims against Han and Crabtree for "cruel and unusual indefinite disciplinary punishment."  Plaintiff complains that Han classified him to an indefinite term in maximum custody, for a "major" disciplinary infraction that does not "amount to" maximum placement pursuant to ADC policies.  Plaintiff further complains that Crabtree denied his appeal of being "classified indefinitely" to maximum custody based on his disciplinary infraction not being sufficient to require maximum custody placement.  Plaintiff also asserts that he has been "told" that he "must complete the STG Step-Down Program, which is not related to any disciplinary matters or requirement to be released from maximum custody as a result of disciplinary" proceedings.  Finally, Plaintiff alleges that he has been forced to spend "years in conditions extremely more harsh" than he previously experienced in a lower

security classification, including losing the ability to see his sister, who has since passed away, having contact visits with other family members, losing his job, and suffering a "significant burden" in practicing his religion.

### iii.  Count Three

In Count Three, Plaintiff alleges that his rights under RLUIPA and the First and Fourteenth Amendments were violated when Defendants Ryan, Vicklund, and Linderman denied his requests for a kemetic diet.  Plaintiff alleges that he is a practitioner of Shetaut Neter, an ancient Egyptian religion that requires its adherents to follow a kemetic diet, which excludes meat, eggs, wheat, refined sugar, table salt, cow milk, and genetically modified or irradiated foods, and requires a four-to-one ratio of raw and cooked vegetables.  Plaintiff alleges that Defendant Vicklund approved his request to change his religious preference to Shetaut Neter on May 25, 2011. Plaintiff further asserts that after "submit[ting] documentation . . . for a kemetic diet" to Defendants Linderman and Vicklund, Plaintiff was "approved . . . for a vegan diet, instead of the requested kemetic diet."   Plaintiff claims that he subsequently filed a grievance requesting that he be provided a kemetic diet or "at least provide[d] certain items such as fruit, substitute for the cow milk, and more fresh vegetable[s] to bring the vegan diet closer to [the] kemetic diet."  Plaintiff asserts that Defendant Ryan denied his grievance.  Plaintiff was informed that fruit would not be provided because of "security reasons," but was not given reasons for the denial of his other requests.

### iv.  Count Four

Count Four contains a separate claim of interference with Plaintiff's religious freedom. Plaintiff asserts that, as an adherent of the Ausarian tradition of Shetaut Neter, he is required to engage in ritual worship that involves statues of nine gods and goddesses called "Neteru," as well as scented oils.  Plaintiff alleges that he submitted a request for permission to purchase the nine Neteru statues that are "essential" to Shetaut Neter ritual worship, and the scented oils. However, Defendants Ryan and Linderman approved the purchase of only one statue of no more than four inches tall, and Linderman denied his

request for scented oils.  According to the First Amended Complaint, Defendant Linderman also stated that Plaintiff "may be authorized additional paper images for other gods/goddesses." Plaintiff claims that he was not provided a reason for this decision, and now complains that he "cannot properly practice [his] religion without the nine statues."

### v.  Count Five

In Count Five, Plaintiff asserts a separate religious freedom claim based on the size restrictions that Defendants Ryan and Linderman imposed on the statue Plaintiff was authorized to purchase.  Plaintiff claims that, after writing to all of the approved vendors of religious statues for Shetaut Neter, which Defendants Vicklund and Linderman provided Plaintiff, Plaintiff received responses indicating that none of those vendors sell Shetaut Neter statues of the appropriate size.  According to Plaintiff, he has been unable to locate a Neteru statue that complies with the height restriction imposed by Defendants Ryan and Linderman because the statutes "are mostly made of the same size and height of those used by the ancient Egyptians for ritual worship," i.e., five to ten inches tall.  Plaintiff also alleges that he is permitted to possess comparably sized items that are made of the same material as the statues he wants to purchase.

### vi.  Count Six

In Count Six, Plaintiff asserts claims that his rights under RLUIPA and the First and Fourteenth Amendments were violated by Defendants Ryan and Linderman when they denied Plaintiff's requests to purchase scented oils for use in his ritual worship. According to Plaintiff, in addition to statues of the Neteru, Shetaut Neter worship involves scented oils that are "an essential element in attracting the presence of the Neteru." Plaintiff alleges that Defendants Ryan and Linderman denied Plaintiff's request for oils because "the scent [of essential oils] can be used to mask illegal and dangerous substances."   Plaintiff asserts, however, prison policy allows inmates to purchase "heavily scented" products "for cosmetic reasons . . . such as body wash, lotions, deodorants, shampoo, hair conditioners, powders, and soaps." Plaintiff claims that as a result of Defendants' actions, he has been denied the ability to "practice [his] religion"

1   and has been prevented from "receiving spiritual enlightenment and guidance," which

2   prohibits him from "grow[ing] spiritually."

3           **b.  Failure to State a Claim**

4           Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519,

5   520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey*

6   *v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a

7   liberal interpretation of a civil rights complaint may not supply essential elements of the

8   claim that were not initially pled.  *Id.*

9           To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants

10   (2) under color of state law (3) deprived him of federal rights, privileges or immunities

11   and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th

12   Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d

13   1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific

14   injury as a result of the conduct of a particular defendant and he must allege an

15   affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*,

16   423 U.S. 362, 371-72, 377 (1976).

17           **i.  Count One**

18           Plaintiff asserts in Count One that his due process rights were violated by

19   Defendants Ryan, Dunn, Han, McLaughlin, and Crabtree in his maximum custody

20   placement.  In analyzing a due process claim, the Court must first decide whether

21   Plaintiff was entitled to any process, and if so, whether he was denied any

22   constitutionally required procedural safeguard.  Liberty interests that entitle an inmate to

23   due process are "generally limited to freedom from restraint which, while not exceeding

24   the sentence in such an unexpected manner as to give rise to protection by the Due

25   Process Clause of its own force, nonetheless imposes atypical and significant hardship on

26   the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515

27   U.S. 472, 484 (1995) (internal citations omitted).

28           Even if a court determines that a protected liberty interest has been implicated, a

plaintiff must specify the due process safeguard he was denied and by whom. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Procedural due process safeguards in a prison disciplinary hearing require that the defendant receive: (1) written notice of the charges, no less than twenty four hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazard hazardous to institutional safety or correctional goals to allow the inmate to do so. *Wolff*, 418 U.S. at 565-66. Thus, to assert a claim for denial of due process in connection with disciplinary proceedings, a plaintiff must allege the circumstances surrounding the disciplinary charge, the safeguard(s) he was allegedly denied, and the punishment imposed. For the initial decision to place an inmate in maximum custody, the procedural requirements of due process generally are satisfied by notice of the factual basis for the placement and an opportunity to be heard. *See Wilkinson v. Austin*, 545 U.S. 209, 224-26 (2005).

Here, although Plaintiff claims to have been denied notice and an opportunity to be heard regarding his alleged removal from the Step-Down Program, Plaintiff alleges that the removal was due to being found guilty of a "major" disciplinary violation. Plaintiff does not allege that he was denied notice of the disorderly conduct charge or that he was prevented from contesting the charge that resulted in his reclassification. Nor does Plaintiff claim that he did not receive notice of his reclassification hearing or that he was denied the opportunity to be heard during the hearing. Therefore, Plaintiff's claim regarding denial of his due process rights with regard to his reclassification to maximum security custody fails to state a claim for relief.

. . . .

. . . .

. . . .

To the extent Plaintiff is alleging that his continued confinement in maximum custody violates his due process rights, Plaintiff's First Amended Complaint also fails to state a claim for relief.   After an inmate is placed in maximum security segregation, he is entitled to "some sort" of "meaningful" periodic review of his status. *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983) ("[A]dministrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates."); *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987-88 (9th Cir. 2014) (holding that an inmate's 27-month confinement in the Intensive Management Unit imposed an atypical and significant hardship that implicated a protected liberty interest because his confinement was "fixed and irreducible" and he did not receive any meaningful reviews of his classification); *see also Hernandez v. Schriro*, CV 05-2853-PHX-DGC (JJM), 2011 U.S. Dist. LEXIS 79265, at *8 (D. Ariz. July 20, 2011) (finding that meaningful annual reviews combined with the option to renounce and debrief at any time satisfy due process in continued maximum custody confinement).

Here, although Plaintiff complains that he has been "indefinitely" confined to maximum custody, he does not allege that he has been denied meaningful periodic reviews of his placement or an opportunity to leave maximum custody through debriefing or completing the Step-Down Program.   Further, although he alleges that Crabtree improperly denied his appeal of his classification because his disciplinary infraction did not result in a score sufficient for maximum custody placement, he asserts that he was allowed to submit an appeal and he received a decision regarding his appeal.   In sum, Plaintiff fails to specifically allege what due process he was owed but not provided related to his continued confinement in maximum security custody.   Accordingly, Plaintiff has failed to state a claim for a violation of his due process rights, and Count One will be dismissed.

### ii.  Count Two

In Count Two, Plaintiff complains that his "indefinite" confinement to a maximum

1   security unit violates his Eighth Amendment rights because his classification score does

2   not warrant maximum security placement.

3        "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and

4   unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S.

5   312, 319, (1986). To state a claim for unconstitutional conditions under the Eighth

6   Amendment, a plaintiff must allege an objectively "sufficiently serious" deprivation that

7   results in the denial of "the minimal civilized measure of life's necessities." *Farmer v.*

8   *Brennan*, 511 U.S. 825, 834 (1994); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994);

9   *see Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002). That is, a

10  plaintiff must allege facts supporting that he is incarcerated under conditions posing a

11  substantial risk of harm. *Farmer*, 511 U.S. at 834. Only deprivations denying the

12  minimal civilized measure of life's necessities are sufficiently grave for an Eighth

13  Amendment violation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation

14  omitted). These are "deprivations of essential food, medical care, or sanitation" or "other

15  conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348

16  (1981). Whether a condition of confinement rises to the level of a constitutional violation

17  may depend, in part, on the duration of an inmate's exposure to that condition. *Keenan v.*

18  *Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). "The more basic the need, the shorter the time

19  it can be withheld." *Hoptowit v. Ray*, 682 F.2d 1287, 1259 (9th Cir. 1982).

20       In addition to alleging facts to support that he is confined in conditions posing a

21  substantial risk of harm, a plaintiff must also allege facts to support that a defendant had a

22  "sufficiently culpable state of mind," i.e., that the official acted with deliberate

23  indifference to inmate health or safety. *See Farmer*, 511 U.S. at 837. In defining

24  "deliberate indifference" in the prison context, the Supreme Court has imposed a

25  subjective test: "the official must both be aware of the facts from which the inference

26  could be drawn that a substantial risk of serious harm exists, *and* he must also draw the

27  inference." *Id.* A plaintiff must also allege how he was injured by the alleged

28  unconstitutional conditions. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 349 (1996) (doctrine

of standing requires that claimant have suffered or will imminently suffer actual harm).

Here, Plaintiff alleges that Defendants Han and Crabtree classified him to a maximum security placement based on his previous "major" disciplinary violation, even though his score did not warrant such a classification.  Plaintiff further claims that his misclassification has caused him to suffer conditions more harsh than those in a lower security facility, including his inability to have contact visits with his family, the loss of his job, and restrictions on his ability to practice his religion.  Plaintiff fails to allege that he is being incarcerated under conditions that impose a substantial risk of harm, or that Defendants Han and Crabtree acted with deliberate indifference to Plaintiff's health or safety.

Further, there is no constitutional right to a prison job or contact visits with family members.  *See Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 846 (9th Cir. 1985) ("General limitation of jobs and educational opportunities is not considered punishment."); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) ("[i]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits . . .").  Additionally, although Plaintiff identifies restrictions on his religious practice in Counts Three through Six of his First Amended Complaint, he fails to allege any facts sufficient to show that Defendants Han or Crabtree were aware of any restrictions on his practice of religion or how any of those restrictions impose a substantial risk of harm.  Accordingly, the Court will dismiss Count Two of Plaintiff's First Amended Complaint.

### c.  Claims for Which an Answer Will Be Required

Liberally construed, Plaintiff has stated claims against Defendants Ryan, Vicklund, and Linderman in Counts Three through Six.  Accordingly, these Defendants will be required to answer Plaintiff's First Amended Complaint.

## III.   Warnings

### a.  Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion

for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### b. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be notified of the requirements for service and copies for the Court that are required for inmates whose cases are not subject to General Order 14-17.

### c. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

Accordingly,

**IT IS ORDERED**:

(1) The reference to the to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Leave to File Amended Complaint (Doc. 17) and the screening of Plaintiff's First Amended Complaint.  All other matters remain referred to the Magistrate Judge for disposition as appropriate.

(2) Plaintiff's Motion for Leave to File Amended Complaint (Doc. 17) is granted. The Clerk of Court shall file Plaintiff's First Amended Complaint lodged at Doc. 18.

(3) Plaintiff's claims in Counts One and Two are dismissed.

(4) Defendants Ryan, Vicklund, and Linderman must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(5) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

**Dated** this 18th day of September, 2015.

Honorable Diane J. Humetewa
United States District Judge